## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

L.T., individually          :   Civil Action No. 04-1381(NLH)
and on behalf of his son,   :
B.T.,                       :
                            :
        Plaintiffs,         :
                            :
     v.                     :   **OPINION**
                            :
THE MANSFIELD TOWNSHIP      :
SCHOOL DISTRICT,            :
                            :
        Defendant.          :
                            :

**APPEARANCES:**

Gregory Guy Johnson, Esquire
282 Glenn Avenue
Lawrenceville, NJ 08648

        *Attorney for Plaintiffs*

James F. Schwerin, Esquire
Brett W. Wiltsey, Esquire
Parker McCay, PA
Building Four East
1009 Lenox Drive
Suite 102A
Lawrenceville, NJ 08648

        *Attorneys for Defendant*

**HILLMAN**, District Judge

## I.   INTRODUCTION

    This matter has come before the Court on the parties' cross-

motions for summary judgment on Plaintiffs' claims arising under

the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.

§ 1400 et seq., the Rehabilitation Act of 1973, 29 U.S.C. §

504(a), and 42 U.S.C. § 1983.  Previous to these cross-motions,

Defendant had filed a motion for summary judgment, and oral argument was heard on Defendant's motion on December 13, 2006. At oral argument, the Court granted in part and denied in part Defendant's motion.  The Court also permitted Plaintiffs to conduct additional discovery.  Discovery is now complete, and Defendant has renewed its motion for summary judgment on Plaintiffs' remaining claims.  Plaintiffs have cross-moved for judgment in their favor.  For the reasons expressed below, the motions will be continued for further briefing, except that Defendant's motion on Plaintiffs' § 1983 claims will be granted.

## II.  BACKGROUND

The facts in this case are mostly uncontested.  B.T. is disabled with Asberger's syndrome, bipolar disorder, ADHD, sensory integration dysfunction, central auditory processing difficulties, and dysgraphia.  Prior to moving to Mansfield Township, B.T. had been classified as eligible for IDEA services, and his previous school district had sent B.T. to the Yale Academy ("Yale"), a private institution.  When B.T. moved to Mansfield, the Mansfield Township Board of Education continued the placement at Yale for the first year he was in Mansfield, which was third grade.

For the following school year, 2002-03, B.T.'s parents no longer wanted B.T. to attend Yale.  Instead of Yale, B.T.'s parents wanted B.T. to attend the Access School ("Access"),

2

another private institution.  The school district did not believe that Access was appropriate for B.T.  The parents filed a due process petition seeking to have B.T. go to Access.  That matter was settled, and the parents and the school district agreed that B.T would attend Access for 2002-03, and that the parents would assume all responsibility for transportation for as long as B.T. attended Access.  The parents were paid $3,000 for all expenses. The Board provided a program for B.T. in the summer of 2003, but transportation was not provided.

In early September of 2003, the parents sought to have B.T. return to the Board's own schools.  As this was not done until after the start of the school year, and there was no program in place for B.T. in-district, it was proposed to the parents that he be temporarily placed on home instruction pending the hiring of a teacher solely to help educate B.T.  Because the parents did not agree, the delay resulted in the teacher in question finding employment elsewhere.  Home instruction was offered and rejected, and B.T. returned to Access in September for that year.  B.T., however, had missed seventeen days of school prior to returning to Access.

B.T.'s parents filed another due process petition, which was also settled.  This settlement provided that the Board would transport B.T. to Access for 2003-04 by mini-van/bus at the Board's expense, that his June 2003 IEP remained in effect, and

3

that an extended year program would be discussed in January 2004. In the summer of 2004, the Board provided B.T. with an extended year program.  Transportation was not provided.  Thereafter, B.T. was no longer the responsibility of the Board because due to his increasing grade level, the Northern Burlington Regional School District became the local educational agency responsible for educating B.T.

Plaintiffs claim that the Board violated the IDEA and the Rehabilitation Act by: 1) not providing a proper extended year program (ESY) during the summers of 2001, 2002, and 2003 to meet B.T.'s needs in speech and occupational therapy; 2) not providing transportation services; and 3) not providing a free appropriate education for the seventeen days during September 2003.

On Defendant's first summary judgment motion the Court granted Defendant's motion on Plaintiffs' claims under the "Child Find" obligation of the IDEA and their claims for punitive damages under the Rehabilitation Act section 504(a) and 42 U.S.C. § 1983.  Defendant has now moved for summary judgment on Plaintiffs' remaining claims for direct violations of the IDEA and the Rehabilitation Act by arguing that section 504 damages are only available for intentional violations and Plaintiffs have failed to exhaust their administrative remedies.  With regard to Plaintiffs' claims for violations of the IDEA brought pursuant to § 1983, Defendant argues that recent precedent bars any recovery

pursuant to § 1983.

## III. DISCUSSION

### A.    Plaintiffs' direct claims for violations of the IDEA and section 504 of the Rehabilitation Act

Plaintiffs' claims, the statutes under which they bring their claims, and Defendant's arguments for judgment in its favor are all intertwined.  Plaintiffs have brought their claims pursuant to both the IDEA and the Rehabilitation Act, which address similar issues.  The IDEA focuses on the appropriateness of the public education afforded special needs students, while the Rehabilitation Act focuses on disability-based discrimination against special needs students.  Hornstine v. Township of Moorestown, 263 F. Supp. 2d 887, 901 (D.N.J. 2003) (citations omitted).  Thus, while the Rehabilitation Act provides relief from discrimination, the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination. Id.

Here, Plaintiffs claim that Defendant's conduct has violated both the IDEA and the Rehabilitation Act.  Plaintiffs claim that Defendant's unilateral decision to exclude B.T. from school in September 2003, which resulted in him missing seventeen days of school, violated section 504 of the Rehabilitation Act because he was not afforded a free appropriate education (FAPE) as required by the IDEA.  Plaintiffs also claim that Defendant's failure to provide an ESY summer program and transportation violated his

5

right to a FAPE under the IDEA.

Defendant argues that Plaintiffs' claims for violations of section 504 of the Rehabilitation Act are not actionable because damages are limited to recovery for intentional acts. Defendant also argues that Plaintiffs' claims arising under the IDEA and prosecuted through section 504 of the Rehabilitation Act must be dismissed for failure to exhaust administrative remedies. Each argument will be addressed in turn.

### 1. *Rehabilitation Act claim*

Defendant claims that Plaintiffs' Rehabilitation Act claim must fail because Plaintiffs have not alleged that Defendant intentionally violated Plaintiffs' rights. Defendant argues that Plaintiffs have only alleged that Defendant failed to provide B.T. with a FAPE, and that claim does not rise to the level of intentional conduct required for a Rehabilitation Act violation. To support its argument, Defendant cites to one in-district case, which cites to another in-district case, both holding that in order to maintain a claim under the Rehabilitation Act, a plaintiff must allege intentional discrimination. See Meadows v. Hudson County Bd. of Elections, 2006 WL 2482956, *11 (D.N.J. Aug. 24, 2006) (quoting Bowers v. NCAA, 118 F. Supp. 2d 494, 507-08 (D.N.J. 2000)). In further support of the contention that a plaintiff must allege intentional discrimination in order to sustain a claim under the Rehabilitation Act, Defendant has also

6

cited to a Fourth Circuit case, <u>Sellers v. School Bd. of City of Mannassas, Va.</u>, 141 F.3d 524, 529 (4th Cir. 1998), and a First Circuit Case, <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 126 (1st Cir. 2003), which have both held that either bad faith or gross misjudgment should be shown before a section 504 violation can be made out, at least in the context of education of handicapped children.

These courts, as well as other circuit courts,[1] have determined that an allegation of intentional conduct is necessary because the Supreme Court held that compensatory damages are available under Title VI of Civil Rights Act of 1964 only for intentional discrimination, and the Rehabilitation Act borrows its remedies from Title VI.  <u>See</u> <u>Alexander v. Sandoval</u>, 532 U.S. 275, 280-81 (2001); 29 U.S.C. § 794a(a)(2) (Rehabilitation Act borrows remedies from Title VI).  The Supreme Court, however, has not explicitly held that intentional conduct is a prerequisite

---

[1] <u>See, e.g.</u>, <u>Saltzman v. Board of Commissioners of North Broward Hospital Dist.</u>, 2007 WL 1732893, *3 (11th Cir. June 15, 2007) (citing <u>Wood v. President & Trs. of Spring Hill College</u>, 978 F.2d 1214, 1219 (11th Cir. 1992)) ("In this Circuit, compensatory damages are recoverable for Rehabilitation Act claims only upon a showing of intentional discrimination."); <u>Daniel v. Levin</u>, 172 Fed. Appx. 147, 149-50 (9th Cir. 2006) (citing <u>Ferguson v. City of Phoenix</u>, 157 F.3d 668, 674 (9th Cir. 1998)) ("To recover monetary damages under Title II of the ADA or RA,[the plaintiff] must establish intentional discrimination on the part of the state officials."); <u>Monahan v. Nebraska</u>, 687 F.2d 1164, 1170 (8th Cir. 1982) (holding that "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown").

for damages under the Rehabilitation Act.

The Third Circuit has not specifically discussed the issue
of the Rehabilitation Act borrowing its remedies from Title VI,
nor has it specifically held that in order to maintain a
Rehabilitation Act claim, a plaintiff must allege more than a
school's failure to provide a free appropriate education under
IDEA.  The Third Circuit has specifically held, however, that a
plaintiff "'need not establish that there has been an intent to
discriminate in order to prevail under § 504.'"  W.B. v. Matula,
67 F.3d 484, 492 (3d Cir. 1995), abrogated on other grounds,
A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007),
quoting Nathanson v. Medical College of Pennsylvania, 926 F.2d
1368, 1384 (3d Cir. 1991) and citing Alexander v. Choate, 469
U.S. 287, 297 (1985).

More recently, the Third Circuit addressed the interplay
between the IDEA and the Rehabilitation Act, and it did not
mention that intentional discrimination must be shown to support
a Rehabilitation Act claim.  In Andrew M. v. Delaware County
Office of Mental Health and Mental Retardation, --- F.3d ---,
2007 WL 1723604 (3d Cir. June 15, 2007), the parents of disabled
twin toddlers sued the county for violations of the IDEA and
Rehabilitation Act for its failure to provide services required
by the IDEA.  Andrew M., 2007 WL 1723604, at *1.  The parents
brought their claims pursuant to Part C of the IDEA, which

Congress passed to encourage states to create statewide programs to provide for developmentally delayed and disabled toddlers. Id. at *4 (citing 20 U.S.C. § 1431).  Part C of the IDEA provides money to states that "develop and implement a comprehensive, coordinated, multidisciplinary, interagency system that provides early intervention services for infants and toddlers with disabilities and their families," id. at *7 (citing 20 U.S.C. § 1431(b)(1)), and those services are to be provided, when possible, in the child's "natural environment," id. (citing 20 U.S.C. § 1432(4)(G)).  Part C is in contrast to the better-known Part B of the IDEA, which requires that states accepting federal funds must provide children of a certain age a free appropriate public education.  Id. at *10 (citing 20 U.S.C. § 1412).

One issue on appeal in Andrew M. was the district court's award of attorney's fees for the county's violation of the Rehabilitation Act when it failed to provide the twins with services under Part C of the IDEA.  The appeals court reversed the order of the district court because it determined that the parents did not establish a violation of the Rehabilitation Act, and because attorney's fees are not available under Part C of the IDEA.  Id.  In so holding, the court explained the difference between Part B and Part C, as well as whether a violation of Part B and Part C could also be a violation of the Rehabilitation Act.

First, the court recounted the district court's reasoning.

9

> The [parents] premised their RA violation on the same
> facts used to prove their IDEA claim, namely that the
> County failed to provide services for their sons in
> their natural environment. In its opinion, the District
> Court found that this was sufficient to prove a
> violation of the RA.  Citing our opinions in Ridgewood
> Board of Education v. N.E., 172 F.3d 238 (3d Cir.
> 1997), and W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995),
> the District Court stated that "there are very few
> differences, if any, between the IDEA's affirmative
> duty to educate a handicapped child and the
> Rehabilitation Act's prohibition in § 504 of
> discrimination against a handicapped individual."
> Therefore, because the [parents] had proved a violation
> of the IDEA, the District Court concluded that they had
> also proved a violation of the RA.

Id. at *9.

Finding that the district court was incorrect, the court explained,

> Our case law makes clear that a party may use the same
> conduct as the basis for claims under both the IDEA and
> the RA. In Matula, we found that "Congress specifically
> intended that [Education of the Handicapped Act, the
> predecessor to the IDEA,] violations could be redressed
> by § 504 . . . as the legislative history reveals." 67
> F.3d at 494.  However, this language does not indicate
> that a violation of the IDEA is a *per se* violation of
> the RA, regardless of whether it meets the independent
> requirements for an RA violation.  As our case law
> indicates by citing the requirements of the RA even in
> cases also brought under the IDEA, see Ridgewood, 172
> F.3d at 253, that a plaintiff must still prove that
> there was a violation of the RA.

Id.

The court then went on to state, however, that even though a

violation of the IDEA is not a *per se* violation of the

Rehabilitation Act, "violations of Part B of the IDEA are almost

10

always violations of the RA." Id. at *10.  The court noted that
under section 612 (Part B) of the IDEA, states accepting federal
funds must provide children of a certain age a free appropriate
public education, id. (citing 20 U.S.C. § 1412), and that the
regulations accompanying the Rehabilitation Act adopt this
requirement and provide that a handicapped person is one "to whom
a state is required to provide a free appropriate public
education under section 612," id. (citing 34 C.F.R. § 104.3(k)).
Based on the language of Part B of the IDEA and the
Rehabilitation Act, the court concluded,

> [W]hen a state fails to provide a disabled child with a
> free and appropriate education, it violates the IDEA.
> However, it also violates the RA because it is denying
> a disabled child a guaranteed education merely because
> of the child's disability.  It is the denial of an
> education that is guaranteed to all children that forms
> the basis of the claim.

Id.

The court then stated that a plaintiff can prove his
Rehabilitation Act claim where "(1) he is 'disabled' as defined
by the Act; (2) he is 'otherwise qualified' to participate in
school activities; (3) the school or the board of education
receives federal financial assistance; and (4) he was excluded
from participation in, denied the benefits of, or subject to
discrimination at, the school." Id. (quoting Ridgewood Board of

Education v. N.E., 172 F.3d 238, 253 (3d Cir. 1997)).[2]

Thus, the court in Andrew M. does not explicitly state that a showing of intentional conduct is necessary to maintain a Rehabilitation Act claim, which follows Third Circuit precedent

---

[2] The court explained why the district court's grant of attorney's fees to the parents was in error.

> [C]hildren denied services under Part B of the IDEA are "otherwise qualified" to participate in school and are denied that education because of their disabilities. However, children under the age of three, who are covered by Part C of the IDEA, are not entitled to a free and appropriate education under § 612. More specifically, the only reason children receiving services under Part C of the IDEA are entitled to such services is by reason of their disability. Therefore, when an agency violates Part C of the IDEA, it does not use disability as a basis to deny a child something to which he is entitled. Rather, the state denies a child services to which he is entitled only because of his disability but on some other basis. In this case, the reason the M twins' services fell short was not because they were disabled, as is the case when children under Part B of the IDEA are denied the education guaranteed to non-disabled children, but because the County misunderstood the concept of natural environment. While this is a violation of the IDEA, it is not a violation of the RA. A plaintiff cannot make out an RA claim simply by proving (1) that he was denied some service and (2) he is disabled. The state must have failed to provide the service for the sole reason that the child is disabled. Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124 (3d Cir.1998) (holding that the disability must be the cause of the discrimination or denial of benefits or services). Because the Ms did not establish a violation of the RA and because attorney's fees are not available under Part C of the IDEA, the District Court erred when granting them attorney's fees.

Andrew M. v. Delaware County Office of Mental Health and Mental Retardation, 2007 WL 1723604, *10 (3d Cir. 2007).

in <u>W.B. v. Matula</u> and <u>Nathanson v. Medical College of
Pennsylvania</u>.   Further, the court in <u>Andrew M.</u> explicitly held
that the failure to provide a disabled child with a free
appropriate education violates both the IDEA and the
Rehabilitation Act.   Even though these cases do not expressly
state that intentional conduct is necessary to maintain a
Rehabilitation Act claim, the very nature of a such a claim,
however, demonstrates that some sort of intentional, as opposed
to merely negligent, conduct is necessary.

First, the fourth element of a Rehabilitation Act claim
suggests intentional conduct.   The fourth element requires that
plaintiff prove "he was excluded from participation in, denied
the benefits of, or subject to discrimination at, the school."
The terms "excluded," "denied," and "subject to discrimination"
all connote purposeful conduct on behalf of the school
district.   Second, the language of section 504 of the
Rehabilitation Act suggests that more than negligence is
required.   Section 504 of the Rehabilitation Act states, in
relevant part:  No otherwise qualified individual with a
disability in the United States . . . shall, solely by reason of
her or his disability, be excluded from the participation in, be
denied the benefits of, or be subjected to discrimination under
any program or activity receiving Federal financial assistance .
. . .  29 U.S.C. § 794(a).   The Third Circuit, in a non-

educational-environment case, stated that the meaning of the causation requirement embodied in the phrase "solely by reason of" an individual's disability language was "designed to weed out section 504 claims where an employer can point to conduct or circumstances that are causally unrelated to the plaintiff's handicap." Menkowitz v. Pottstown Memorial Medical Center, 154 F.3d 113, 124 (3d Cir. 1998) (citation omitted). This also suggests that more than mere negligence is necessary to maintain a Rehabilitation Act claim.

It appears uncontested that B.T. is disabled, he is otherwise qualified to participate in school activities, and Defendant receives federal financial assistance. Thus, the dispositive issue to determining Plaintiffs' Rehabilitation Act claim is whether B.T. was discriminated against--that is, whether B.T.'s right to a free appropriate education was violated--when he missed seventeen days of school in September 2003. Neither party has addressed the above-described Third Circuit precedent, however, in the context of what type of conduct by Defendant is necessary to support this claim. Consequently, the Court will direct that the parties submit supplemental briefing on this issue based on Third Circuit precedent. The parties are also directed to address what damages Plaintiffs would be entitled to if the Court finds that Defendant violated B.T.'s rights under the Rehabilitation Act.

14

2.    *IDEA claims*

Defendant argues that Plaintiffs' IDEA claims must fail because they failed to exhaust their administrative remedies prior to filing suit.[3]  Under the IDEA, any aggrieved party may "present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6).  The party may elect to have the complaint investigated by the state educational agency, see 34 C.F.R. § 300.661, or avail itself of an "impartial due process hearing," 20 U.S.C. § 1415(f).  Any party aggrieved by the outcome of the due process hearing "shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States, without regard to the amount in controversy."  Id. § 1415(i)(2)(A).  This action must be initiated within 90 days from the date of the hearing officer's decision.  Id. § 1415(i)(2)(B).  The district court is authorized to grant "such relief as the court determines is appropriate," including attorneys' fees, reimbursement for a private educational placement, and compensatory education.  See

---

[3]Correspondingly, Defendant argues that Plaintiffs' Rehabilitation Act claim must also be dismissed for failure to exhaust their administrative remedies.  The Court acknowledges that if Plaintiffs' IDEA claims were to be dismissed for exhaustion, Plaintiffs Rehabilitation Act claim must also be dismissed.

id. § 1415(i)(3)(B)(i).

The IDEA ordinarily requires, however, that a party exhaust the IDEA's administrative remedies before pursuing claims under the IDEA as well as other statutes.

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(1).

Judge Sheridan recently surveyed the case law on exceptions to the exhaustion requirement:

> In Honig v. Doe, 484 U.S. 305, 327 (1988), the Court stated that "parents may bypass the administrative process where exhaustion would be futile or inadequate." Other exceptions exist where the issue presented is purely a legal question (Lester H. by Octavia P. v. Gilhool, 916 F.2d 865, 869-70 (3d Cir. 1990)), where the administrative agency cannot grant relief (Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775 (3d Cir. 1994)), and where 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law.'" Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)).  In analyzing the futility and inadequate exceptions, Courts have found exhaustion to be excused "where plaintiffs allege structural or systemic failure and seek systemwide reforms." Romer, 992 F.2d at 1044; see also Beth V. by

16

Yvonne V. v. Carroll, 87 F.3d 80, 89 (3d Cir. 1996).
"However, in pursuing these claims plaintiffs must show
that the policies are contrary to law, and that the
underlying purpose of exhaustion would not be serviced
by requiring procedural compliance." Ellenberg v. New
Mexico Military Institute, 478 F.3d 1262, 1277 (10th
Cir. 2007).

Grieco v. New Jersey Dept. of Educ., 2007 WL 1876498, *6 (D.N.J.

June 27, 2007).

Here, Plaintiffs do not rely on any of these cases to

support the contention that their IDEA claims should not be

dismissed for failure to exhaust their administrative remedies.

Instead, Plaintiffs argue the following: 1) the Third Circuit in

W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995) indicated that

there are some instances where exhaustion is not necessary; 2)

the settlement of their two due process claims did not waive

their right to pursue an action for damages; and 3) they are

entitled to money damages for their IDEA claims.  Plaintiffs,

however, do not further elaborate on their arguments.

W.B. v. Matula presented two situations where exhaustion was

not required.  First, the court excused the exhaustion of

administrative remedies when the relief sought in a civil action

was not available in an IDEA administrative proceeding.  Matuala,

67 F.3d at 496.  The court provided two examples, one where the

parties sought compensatory education and the other where the

parties sought placement in a unapproved residential program.

17

Id.  In both of those cases, the requested relief was unavailable
in the administrative proceeding.  Id.  Applying those examples
to the case before it, the Matula court determined that the
plaintiffs' requested relief--money damages pursuant to 42 U.S.C.
§ 1983--was also not available in the administrative proceeding,
and, thus, the plaintiffs were not required to exhaust their
administrative remedies.  Id.

     The court in Matula also excused the exhaustion of
administrative remedies when the factual record had already been
fully developed at the administrative level.  Id.  The court
noted that one purpose of the administrative proceedings was to
develop the factual record and resolve evidentiary disputes
concerning evaluation, classification, and placement.  Id.
(citing Lester H. by Octavia P. v. Gilhool, 916 F.2d 865, 869-70
(3d Cir. 1990)).  Because the plaintiff's classification and
placement had already been resolved in the numerous proceedings
before the administrative law judge, the court determined that
the factual record had been developed and "an action seeking
compensation for the alleged IDEA violations is now ripe for
judicial resolution."  Id.

     Even though the Court is reluctant to make Plaintiffs'
arguments for them, it appears that by relying on Matula
Plaintiffs are contending that exhaustion of their administrative
remedies would be futile because they are seeking damages

unavailable to them in IDEA administrative proceedings, and that the record has already been established as to B.T.'s classification and placement by the two administrative hearings which resulted in settlement.  Plaintiffs' reliance on Matula for the first contention is unpersuasive, however, not only because Matula's holding that a plaintiff can bring a claim pursuant to § 1983 for violations of the IDEA has been abrogated,[4] but also because Plaintiffs have not explained why they are entitled to their requested relief, or why the administrative proceedings could not provide them with that relief.

Plaintiffs' reliance on Matula for the second contention has more merit.  If the Court were to dismiss Plaintiffs' IDEA claims for their failure to exhaust administrative remedies, Defendant has not expressed how a third administrative proceeding would resolve the controversy.  Since the filing of Plaintiffs' Complaint in this Court on March 24, 2004, full discovery under the Federal Rules of Civil Procedure was conducted by the parties, and following oral argument on December 13, 2006 the Court granted additional discovery as to Plaintiffs' transportation claims.  Discovery is now closed, and Plaintiffs' claims are either ripe for summary judgment or trial.  It is unclear how another administrative proceeding would advance the

---

[4] See A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007).  This issue is discussed in detail in Section III.B. below.

matter any further.  Indeed, at this advanced stage of the case,

if Plaintiffs refiled their claims administratively, it would be

the administrative law judge who would rely on this Court's

fully-developed record, instead of the other way around.

See Lester H. by Octavia P. v. Gilhool, 916 F.2d 865, 869 (3d

Cir. 1990) (citation omitted) (stating that "where the factual

record is fully-developed and no evidentiary disputes remain, the

court can and should decide legal issues").

     The exhaustion requirement serves several important

purposes:

          (1) permitting the exercise of agency discretion and
          expertise on issues requiring these characteristics;
          (2) allowing the full development of technical issues
          and a factual record prior to court review; (3)
          preventing deliberate disregard and circumvention of
          agency procedures established by Congress; and (4)
          avoiding unnecessary judicial decisions by giving the
          agency the first opportunity to correct any error.


Grieco, 2007 WL 1876498, at *5-6 (quoting Hayes v. Unified Sch.

Dist. No. 377, 877 F.2d 809, 814 (10th Cir. 1989) (quoting

Association for Retarded Citizens, Inc. v. Teague, 830 F.2d 158,

160 (11th Cir. 1987) (citations omitted))).  These goals may have

been served if the exhaustion issue had been raised at the

beginning of this litigation.  Had Defendant raised the

exhaustion issue when Plaintiffs first filed their Complaint in

early 2004, dismissal of their claims at that point may have been

appropriate because Plaintiffs had already filed two successful administrative due process claims, and perhaps a third proceeding would have either resolved all their issues, or resulted in an appropriate appeal to this Court.

Determining what would have happened if Plaintiffs' failure to exhaust their administrative remedies had been raised at the beginning of the litigation is not an issue before the Court, however.  Further, this is not a case where Plaintiffs never availed themselves of the administrative process, but rather one where they filed two due process claims and chose to settle those claims, presumably so that their child would receive education and services immediately, rather than waiting for the resolution of a lengthy appeals process.  See Honig v. Doe, 484 U.S. 305, 327 (1988) (recognizing petitioner's argument that the availability of judicial relief is more illusory than real, because a party seeking review under § 1415(e)(2) must exhaust time-consuming administrative remedies, and holding that although it is true that judicial review is normally not available under § 1415(e)(2) until all administrative proceedings are completed, parents may bypass the administrative process where exhaustion would be futile or inadequate (citing Smith v. Robinson, 468 U.S. 992, 1014, n.17 (1984) (citing cases); Cong. Rec. 37416 (1975) (remarks of Sen. Williams) ("[E]xhaustion . . . should not be required . . . in cases where such exhaustion would be futile

21

either as a legal or practical matter."))).

Therefore, based on the current procedural posture of the case, dismissal of Plaintiffs' claims for their failure to exhaust their administrative remedies three years after the filing of their Complaint appears to be a waste of judicial resources, inconsistent with the purposes of administrative process, and an inequitable use of the IDEA exhaustion requirement.[5]  Consequently, Plaintiffs' IDEA claims will not be dismissed for their failure to exhaust their administrative remedies.  As a result, the substantive issues of whether Defendant's failure to provide B.T. with an ESY summer program and transportation violated his right to a FAPE under the IDEA must be decided.  Because of the change in law during the pendency of this litigation, as well as Defendant's alternative arguments for summary judgment, this issue has not been fully briefed.  The Court will direct the parties to file supplemental briefing on this issue, as well as what damages Plaintiffs would be entitled to should the Court determine that Defendant violated B.T.'s IDEA rights.

---

[5]The Court is aware that Defendant raised the exhaustion requirement for the first time at oral argument held on December 13, 2006, and the Court granted Defendant leave to renew its motion on that basis following additional discovery, which closed on March 30, 2007.  Even if, however, the issue had been briefed and ripe for the Court's consideration in December 2006, the Court's analysis of the issue would not have been different from its holding today.

**B.    Plaintiffs' claims for violations of the IDEA brought pursuant to § 1983**

When Plaintiffs filed their Complaint, they brought claims against Defendant pursuant to 42 U.S.C. § 1983 for violations of the IDEA, which <u>W.B. v. Matula</u>, 67 F.3d 484, 494 (3d Cir. 1995) allowed.  The Third Circuit recently re-addressed the issue of whether § 1983 is available to redress violations of federal statutes, and held that its reasoning in <u>Matula</u> "is no longer sound."  <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791 (3d Cir. 2007).  In <u>A.W. v. Jersey City Public Schools</u>, a student suffering from dyslexia claimed that he was not afforded a free appropriate public education because despite ample evidence of his disability, the school district and several teachers and administrators had conducted an inadequate investigation, which left him unidentified and untreated.  The plaintiff brought his claims against the school district and individual defendants pursuant to § 1983 for violations of the IDEA and section 504 of the Rehabilitation Act.

After an extensive analysis, the court noted that the IDEA includes a judicial remedy for violations of any right "relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6), and held that "[g]iven this comprehensive scheme, Congress did not intend § 1983 to be available to remedy violations of the IDEA such as

23

those alleged by A.W." <u>A.W.</u>, 486 F.3d at 803.

Here, Plaintiffs also assert claims pursuant to § 1983 for a violation of B.T.'s right to a free appropriate education under the IDEA.  Following <u>A.W.</u>, these claims are not viable.  Consequently, Defendant is entitled to summary judgment on Plaintiffs' § 1983 claims.

**IV.  CONCLUSION**

For the reasons expressed above, the parties' cross-motions for summary judgment on Plaintiffs' Rehabilitation Act and IDEA claims will be continued pending the submission of supplemental briefing as described in this Opinion and accompanying Order.  Defendant's motion for summary judgment on Plaintiffs' § 1983 claims will be granted.


Dated: August 10, 2007          <u>s/ Noel L. Hillman</u>

At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

24